# In the Iowa Supreme Court

No. 23–1829

Submitted September 12, 2024—Filed February 28, 2025

**Marleny Rivas,**

Appellant,

vs.

**Derek Brownell** and **Lindsey Wessel,**

Appellees.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, judge.

A plaintiff appeals the district court's granting of the defendants' motion to dismiss for failing to file her lawsuit within the statute of limitations. **Reversed and Case Remanded.**

McDermott, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman and Mansfield, JJ., joined. McDonald, J., filed an opinion concurring in the judgment, in which Oxley, J., joined. May, J., filed a dissenting opinion.

Christopher Johnston (argued) of Law Group of Iowa, Windsor Heights, for appellant.

Jack W. Leverenz (argued) and Allison J. Frederick of Carmoney Law Firm, PLLC, Des Moines, for appellee Derek Brownell.

Nicholas P. Moreland, Anna M. Hardin Staveley, and Kent A. Gummert of Lederer Weston Craig PLC, West Des Moines, for appellee Lindsey Wessel.

**McDermott, Justice.**

Marleny Rivas sued the drivers of two other vehicles to recover damages for injuries she suffered in a car crash. Rivas alleges she was injured on August 4, 2018. But she didn't file her lawsuit until October 16, 2020—a date beyond the two-year statute of limitations but within a seventy-six-day tolling period set forth in a supreme court supervisory order entered in response to the COVID-19 pandemic.

The defendant drivers of the two other vehicles, Derek Brownell and Lindsey Wessel, filed motions for summary judgment seeking dismissal of Rivas's claims. They argued that the lawsuit was time-barred because Rivas failed to file it within two years of the date of the alleged injury, and that the supreme court's tolling provision was ineffectual because it violated the separation of powers. They also argued that the tolling provision violated their due process rights. Rivas resisted the motions. The district court granted summary judgment against Rivas, concluding that the supreme court lacked the power to toll the deadline in its supervisory order and thus that Rivas filed the lawsuit beyond the statute of limitations. Rivas appealed, and we retained the case. This appeal requires us to answer whether the supreme court possessed emergency powers to toll the statute of limitations during part of the pandemic.

First, some background about the events giving rise to the supervisory orders at issue. In December 2019, patients in China's Hubei Province reported an unusual pneumonia-like illness that did not respond well to standard treatments. *See* Ctrs. for Disease Control & Prevention, *CDC Museum COVID-19 Timeline,* https://www.cdc.gov/museum/timeline/covid19.html [https://perma.cc/Q9RG-6NSW] (July 8, 2024). By mid-January 2020, person-to-person spread of the virus (then known as the 2019 Novel Coronavirus) had

slowly begun to occur in the United States. On January 31, the World Health Organization (WHO) declared the virus's outbreak a "Public Health Emergency of International Concern." *Id.* The United States declared a public health emergency shortly after. *Id.*

In the period that followed, COVID-19 (the shortened name for Coronavirus Disease 2019) quickly came to dominate the world's attention as infections spread and hospitalizations and deaths began to mount. On March 11, the WHO declared the COVID-19 outbreak a global pandemic. *Id.* The Iowa legislature suspended its session effective March 16. S. Journal, 88th G.A., 2d Sess., at 622 (Iowa 2020); H. Journal, 88th G.A., 2d Sess., at 605 (Iowa 2020). The suspension was initially scheduled to last through April 15, but was later extended further, first to April 30, then to May 15, and then to June 3. Legis. Servs. Agency, *Minutes Legislative Council* 2 (Apr. 9, 2020) (extending to April 30); Legis. Servs. Agency, *Minutes Legislative Council* 2 (Apr. 29, 2020) (extending to May 15); Legis. Servs. Agency, *Minutes Legislative Council* 2 (May 14, 2020) (extending to June 3). The legislature briefly reconvened thereafter before adjourning the session for good on June 14. S. Journal, 88th G.A., 2d Sess., at 852 (Iowa 2020); H. Journal, 88th G.A., 2d Sess., at 783 (Iowa 2020).

State governments across the country began implementing an array of measures designed to safeguard residents from the virus. Iowa's was no exception. On March 17, Governor Kim Reynolds issued a proclamation of disaster emergency in response to the outbreak. State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Mar. 17, 2020) [hereinafter March 17, 2020

Proclamation].[1] This turned out to be the first in a series of such disaster emergency proclamations, the last of which would not expire until February 15, 2022. *See* State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Feb. 3, 2022).[2]

Initial proclamations included directives to close bars, restaurants, gyms, theaters, and casinos; limit the size of public gatherings to no more than ten people; temporarily expand telehealth services and permit the practice of medicine by physicians and nurses with lapsed licenses; and ban all nonessential or elective surgeries and procedures that use protective equipment at all hospitals or outpatient surgery facilities. *Id.*; State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Mar. 26, 2020) [hereinafter March 26, 2020 Proclamation];[3] March 17, 2020 Proclamation. Later proclamations imposed requirements, among others, that all people aged two or older (with limited exceptions) "wear a mask or other face covering when inside an indoor space that is open to the public and within six feet of individuals who are not members of their household for 15 minutes or longer." State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Nov. 16, 2020).[4] "These are unprecedented times," Governor Reynolds said in a statement that accompanied the first proclamation, "and the state of Iowa will do whatever is necessary to address this public health disaster." Press Release, Governor Kim Reynolds, *Gov.*

---

[1]Available at https://orghomelandsecurity.iowa.gov/wp-content/uploads/2023/01/COVID-Proc-2020-03-17.pdf [https://perma.cc/R6TX-BEQY].

[2]Available at https://orghomelandsecurity.iowa.gov/wp-content/uploads/2022/02/Public-Health-Proclamation-2022-02-03.pdf [https://perma.cc/4VCK-9QLQ].

[3]Available at https://orghomelandsecurity.iowa.gov/wp-content/uploads/2023/01/COVID-Proc-2020-03-26.pdf [https://perma.cc/ST4W-TQEA].

[4]Available at https://orghomelandsecurity.iowa.gov/wp-content/uploads/2023/01/COVID-Proc-2020-11-16.pdf [https://perma.cc/KC78-EJZK].

*Reynolds Issues a State of Public Health Disaster Emergency* (March 17, 2020), https://governor.iowa.gov/press-release/2020-03-17/gov-reynolds-issues-state-public-health-disaster-emergency [https://perma.cc/Q9DU-CC4C].

The supreme court's efforts to address the pandemic's effect on state court operations included a series of supervisory orders. Between March 12, 2020, and February 11, 2022, our court issued over thirty COVID-19-related supervisory orders. These supervisory orders sought to protect the public and court staff while keeping the court system functioning—or as we put it, "balancing the need to take measures to reduce the spread of the virus with [the judicial branch's] commitment to conducting business as necessary." Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* 1 (May 22, 2020) [hereinafter May 2020 Supervisory Order].[5]

The supervisory orders reflect an attempt to comply with requirements in the Governor's public health disaster proclamations, to account for fluctuating rates of infection in local communities across Iowa, and to incorporate evolving understandings of the virus's transmission and how best to prevent its spread— all while keeping the court system functioning as much and as efficiently as possible. The scope of the matters addressed in the supervisory orders includes measures of varying degrees of magnitude, such as postponing all jury and nonjury criminal trials, requiring certain proceedings to occur only by electronic means, extending the speedy-indictment deadline in criminal cases, closing the judicial branch building to the public, requiring physical distancing in courtrooms, and modifying requirements for how people sign court filings and plea agreements. *Id.* at 2–18; Iowa Sup. Ct. Supervisory Order, *In the Matter of*

---

[5]Available at https://www.iowacourts.gov/collections/499/files/1093/embedDocument/ [https://perma.cc/RU9W-WMZX].

*Preparation for Coronavirus/COVID-19 Impact on Court Services* 2 (Mar. 12, 2020) (closing courthouses to the public).[6]

Pertinent to this appeal, the supervisory orders also contained a provision tolling certain deadlines, including the statute of limitations in civil cases. A statute of limitations is a law that sets a time limit for filing a legal action. *Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 93 (Iowa 2002). Iowa Code § 614.1(2) (2020) provides that the statute of limitations to bring claims to recover damages based on personal injury is two years. To "toll" a time limit—in this case a statute of limitations—means "to abate" or "to stop the running of" the period. *Toll, Black's Law Dictionary* 1797 (12th ed. 2024).

> The provision in our supervisory order tolling the limitations period stated:

> Any statute of limitations, statute of repose, or similar deadline for commencing an action in district court is hereby tolled from March 17, 2020 to June 1, 2020 (76 days). Tolling means that amount of time to the statute of limitations or similar deadline. The 76 days of tolling will apply if the deadline for commencing the action would otherwise expire any time from March 17, 2020 to December 31, 2020. In other words, if the statute would otherwise run on July 7, 2020, it now runs on September 21, 2020 (76 days later). However, after December 31, 2020, any tolling will be phased out and eliminated. Thus, if the deadline for commencing the action would otherwise expire on any date from December 31, 2020 to March 16, 2021 (the 76th day of 2021), inclusive, that deadline would become March 17, 2021, and thereafter there would be no tolling at all.

May 2020 Supervisory Order at 14.

Rivas argues that the district court erred in holding that the tolling provision violated our constitutional separation of powers. "The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system." *State v.*

---

[6]Available at https://www.iowacourts.gov/collections/464/files/1043/embedDocument/ [https://perma.cc/VH8W-3GDH].

*Barker*, 89 N.W. 204, 208 (Iowa 1902). The separation of powers among the three branches prevents "a gradual concentration of the several powers in the same department," *The Federalist No. 51*, at 349 (James Madison) (Jacob E. Cooke ed., 1961), and thus serves as a "safeguard against tyranny," *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 872–73 (Iowa 1978) (en banc). The Iowa Constitution expressly provides for a separation of powers:

> The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, § 1.

The legislative power, broadly speaking, "is the power to make, alter, and repeal laws and to formulate legislative policy." *In re C.S.*, 516 N.W.2d 851, 859 (Iowa 1994); *see also* Iowa Const. art. XII, § 1. The judicial power, on the other hand, "is ordinarily defined to be the power to construe and interpret the Constitution and laws, and to apply them and decide controversies." *Hutchins v. City of Des Moines*, 157 N.W. 881, 887 (Iowa 1916); *see also* Iowa Const. art. V, § 4.

The Iowa Constitution grants certain powers to the legislature affecting how the judiciary carries out the judicial power, including that the supreme court's jurisdiction is subject to "such restrictions as the general assembly may, by law, prescribe." Iowa Const. art. V, § 4. Power is further granted to the legislature "to provide for a general system of practice in all the courts of this state." *Id.* art. V, § 14. We see these powers carried out in statutes addressing, for instance, "who can participate in judicial proceedings, what information or evidence can be presented in judicial proceedings, and what information or

evidence can be considered in judicial proceedings." *State v. Thompson*, 954 N.W.2d 402, 413 (Iowa 2021).

But the legislature's power to provide a general system of practice for the courts does not vest "the power to adopt rules of practice in the legislature *exclusively*." *Iowa C.L. Union v. Critelli*, 244 N.W.2d 564, 569 (Iowa 1976) (en banc) (emphasis added). The judicial power necessarily includes "inherent authority" for the supreme court "to craft protocols and procedures in its courts." *Thompson*, 954 N.W.2d at 411 (emphasis omitted). More directly, the constitution explicitly vests in the supreme court the power to "exercise a supervisory and administrative control over all inferior judicial tribunals throughout the state." Iowa Const. art. V, § 4.

Rivas argues that we already rejected the constitutional challenge to our supervisory orders raised in this case in *State v. Basquin*, 970 N.W.2d 643 (Iowa 2022). In *Basquin*, the defendant was convicted after entering a written *Alford* guilty plea to a felony drug charge. *Id.* at 650. Our rules of criminal procedure at the time required judges accepting guilty pleas to conduct in-person colloquies with defendants to ensure that pleas were entered voluntarily and intelligently and with a factual basis. *Id.* at 652; *see also* Iowa R. Crim. P. 2.8(2)(*b*) (2020). But the procedural rule permitted written guilty pleas only for misdemeanors, not felonies, which was the level of crime at issue in *Basquin.* 970 N.W.2d at 651–52.

Our supervisory order temporarily modified the procedural rule that permitted written guilty pleas only for misdemeanors, stating: "Through December 31, 2020, district courts may accept written guilty pleas in *felony* cases in the same manner as in serious and aggravated misdemeanors cases. *See* Iowa R. Crim. P. 2.8(2)(*b*) (last paragraph)." *Id.* at 654 (emphasis omitted and

added) (quoting May 2020 Supervisory Order). The defendant in *Basquin* argued that the district court erred in accepting his written plea to the felony charge because it violated criminal rule 2.8(2)(*b*)'s restriction on written guilty pleas for felonies, and that the supervisory order purporting to amend the rule was invalid because it violated the separation of powers. *Id.* at 651.

On appeal, we analyzed the contours of the divided powers granted to the legislature and judiciary involving court matters, noting that the separation of powers "is not rigid." *Id.* at 657. "[S]ome acts can be properly entrusted to more than one branch of government, and some functions inevitably intersect." *Id.* (alteration in original) (quoting *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 260 (Iowa 2002)). The constitution involves a certain measure of overlapping responsibilities, we observed, "entrust[ing] both the legislature and the judiciary with ensuring that the judicial branch functions and administers justice." *Id.*

In a unanimous opinion, we affirmed the defendant's conviction in *Basquin*, concluding that we had "inherent, statutory, and common law authority" for authorizing written guilty pleas for felonies under the circumstances. *Id.* "Our COVID-19 supervisory orders providing for temporary procedural measures in response to a global pandemic," we held, "fall well within this grant of constitutional authority dedicated to the judicial branch." *Id.*

Brownell and Wessel argue that *Basquin*'s holding does not control the outcome here because that case involved a court-adopted procedural rule and not "any statute enacted by the legislature." The important difference, they argue, is that statutes of limitations are within the legislature's authority, *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 447 (Iowa 2008), while the supreme court has the power to prescribe procedural rules, Iowa Code § 602.4201.

But the attempted distinction between statutes and procedural rules loses some force when one considers the legislature's role in adopting procedural rules. True, the supreme court has statutory authority to draft rules of pleading and practice for civil and criminal proceedings. *Id.* § 602.4201(1). But the court must submit these rules to the legislative council and simultaneously report the rules to the chairpersons and ranking members of the legislature's senate and house judiciary committees. *Id.* § 602.4202(1). The legislative council can delay—and thus prevent—the court's proposed civil and criminal rules of procedure from taking effect. *Id.* § 602.4202(2). The legislature can also supersede any rule submitted by the supreme court by passing a bill changing the rule. *Id.* § 602.4202(4). We recognized this very point in *Basquin.* 970 N.W.2d at 655–56. In short, the legislature, by statute, retains final say over the content of all rules of civil and criminal procedure.

What's more, Brownell and Wessel's narrow reading of *Basquin*'s holding as limited to court rules is tough to square with the expansive language we used throughout the opinion to explain our holding. Focusing on the source and scope of our constitutional power to enter the supervisory order, we broadly declared in *Basquin* that "[t]he constitution allows us to use our supervisory and administrative authority when necessary, which includes responding to a global pandemic." *Id.* at 655. Elaborating on the point, we said:

> Our COVID-19 supervisory orders providing for temporary procedural measures in response to a global pandemic fall well within this grant of constitutional authority dedicated to the judicial branch. We also can rely on our inherent, statutory, and common law authority, as discussed above, as a source of power for the COVID-19 supervisory orders.

*Id.* at 657. We cited cases such as *Hutchins v. City of Des Moines*, 157 N.W. 881, 889 (Iowa 1916), for the proposition that "[t]he constitution grants us 'unlimited

supervisory control over inferior tribunals throughout the state, and authority to issue all writs and process necessary to secure justice to parties,' " and *In re Judges of Municipal Court,* 130 N.W.2d 553, 554 (Iowa 1964) (per curiam), for the proposition that "[t]he grant of the power of supervision and administration implies a duty to exercise it . . . [a]nd necessarily this power must apply to something beyond the ordinary appellate procedure and correction of errors of law." *Basquin,* 970 N.W.2d at 655.

Our reasoning in *Basquin* focused less on the nature of the legal provision being modified (whether rule or statute) and more on the supreme court's constitutional source of power in taking emergency action to modify it. But even accepting Brownell and Wessel's argument that the differences between a procedural rule and a statute distinguish *Basquin,* we're still left with an almost identical constitutional analysis that turns on whether the supreme court possesses the power to modify procedural limitations in an emergency.

Again, the constitution vests the supreme court with "supervisory and administrative control" over all state courts. Iowa Const. art. V, § 4. Interestingly, the constitution has not always provided the supreme court with "administrative" power over the court system. Iowa's original constitution, adopted in 1857, stated only that the supreme court possessed power to exercise "a supervisory control" over the courts in the state. Iowa Const. art. V, § 4 (1857). The addition of "a supervisory *and administrative* control" came by constitutional amendment in 1962. *Compare id., with* Iowa Const. art. V, § 4; *see also* S. Journal, 58th G.A., 1st Sess., at 101–02 (Iowa 1959). We have never defined precisely what "supervisory" or "administrative" control entails. No party in this case suggests that the public meaning of either word means something different today than it did when article V, § 4 was ratified. "Supervisory" is an adjective

formed from the verb "supervise," which means to "observe and direct the work of (someone)." *Supervise, New Oxford American Dictionary* 1747 (3d ed. 2010). "Administrative" is an adjective formed from the transitive verb "administer," which means to "manage and be responsible for the running of (a business, organization, etc.)." *Administer, id.* at 21. That Iowans deemed it necessary to add "and administrative" to this section in 1962 suggests the grant of some separate, additional power beyond supervision of lower courts.

Statutes of limitations advance multiple interests. They aid defendants "by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Ord. of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944) (Jackson, J.). They benefit plaintiffs by "preserving the right to pursue a claim for a reasonable period of time." *State v. Tipton*, 897 N.W.2d 653, 671 (Iowa 2017) (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)). They work a balance, in other words, between the idea that defendants should not be left open to indefinite liability and the idea that plaintiffs deserve a fair opportunity to have their day in court. *Cf.* Iowa R. Crim. P. 2.33(2) ("It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to *both* parties." (emphasis added)).

The COVID-19 pandemic brought about unprecedented temporary changes to societal functioning that upended this balance. Among the earliest prevailing strategies to prevent the spread of the virus involved "social distancing," which required maintaining physical distance between people and reducing the number of times people came into close contact with each other. Out of necessity for the public's safety, government and public health officials

strongly encouraged (and in some cases, required) people to avoid many of the usual in-person encounters that they had always experienced. *See, e.g.*, March 17, 2020 Proclamation. This included prohibitions on eating out at a restaurant with your family, watching a movie at your local theater, participating in a high school sporting event, and going to church or synagogue or other religious ceremonies. *See id.*

The practice of law was not spared from pandemic-related disruptions. Attorneys and clients were operating under restrictions that few had ever contemplated, let alone experienced. Lawyers' abilities to meet in person with clients diminished significantly as many offices closed and social distancing became the norm. *See Askvig v. Snap-On Logistics Co.*, 967 N.W.2d 558, 561–62 (Iowa 2021) (noting that "[t]he coronavirus crisis created real obstacles" in the practice of law and in particular "more difficulty meeting with clients and potential witnesses before filing an action").

Pandemic restrictions severely limited lawyers in their ability to meet with witnesses and engage in other necessary investigation that required in-person contact. *See id.* Lawyers have an independent duty to investigate the merits of a client's claims before filing them. *See* Iowa R. Civ. P. 1.413(1) (imposing a duty on a lawyer to certify "that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, [the claim] is well grounded in fact and is warranted by existing law"); Iowa R. of Prof'l Conduct 32:3.1 (requiring that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous"). Problems associated with the need to avoid personal contact were "the fundamental concern that drove this court's early supervisory orders." *Askvig*, 967 N.W.2d at 559 (holding that the supervisory orders did not extend the

deadline for administrative appeals in part because of practical distinctions between the obstacles pandemic restrictions created for administrative appeals and original district court lawsuits).

Parties with personal injury claims (such as the one in this case) confronted the additional—and potentially intractable—problem of not being able to meet with medical professionals as the statute of limitations wound down. The Governor's March 26, 2020 Proclamation temporarily banned nonessential or elective surgeries and procedures. This restriction presented a particularly acute problem for parties with possible medical malpractice claims, as the law generally requires plaintiffs in those cases to promptly serve a certificate of merit affidavit signed by an expert witness who is "in the practice of that profession or occupation"—thus usually another medical provider—stating familiarity with the standard of care and certifying under oath that the medical provider sued in the lawsuit breached this standard of care. Iowa Code § 147.140(1)(*a*)–(*b*). These are just a few of many roadblocks that pandemic restrictions placed in the way of parties seeking simply to *initiate* a lawsuit, to say nothing of those in the way of litigants trying to prosecute or defend against ongoing lawsuits.

In our view, addressing these types of roadblocks by tolling statutes of limitations falls within the judicial power and our explicit authority to exercise "supervisory and administrative control" over the court system. Iowa Const. art. V, § 4. This is true notwithstanding the legislature's recognized authority to establish limitations periods in civil cases. "In determining the balance of power between our branches of government," we have said, "it is important to understand that the separation of powers doctrine does not have rigid boundaries." *State v. Hoegh*, 632 N.W.2d 885, 889 (Iowa 2001). We have long recognized that "some acts can be properly entrusted to more than one branch

of government" and that "some functions inevitably intersect." *Id.*; *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring in the judgment) (explaining that "interdependence" and "reciprocity" characterize the relationship between the branches as much as "separateness" and "autonomy"). The tolling provision in our supervisory order sought to maintain the status quo in the legislature's balancing of benefits such that plaintiffs did not effectively receive *less* time than the legislature afforded them under § 614.1. The tolling period, in our view, thus worked to preserve the legislature's limitations period, not undermine it, by ensuring that plaintiffs received the full two-year period to investigate and file claims.

What's more, judicial action tolling statutes of limitations is far from a foreign concept in our law. On the contrary, "equitable exceptions to limitations statutes are common in Iowa." *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 566 (Iowa 2018). Iowa courts have tolled limitations deadlines on equitable grounds principally under two judicially created doctrines: equitable estoppel and the discovery rule. *Id.*

"As early as 1875, we recognized equitable estoppel as providing a vehicle to toll a statute of limitations." *Id.* at 567. Under our equitable estoppel doctrine, a plaintiff's limitations period is tolled if a defendant engages in conduct that the defendant knew would prevent the plaintiff from timely filing suit. *Christy v. Miulli*, 692 N.W.2d 694, 700–01, 703–04 (Iowa 2005). Although the legislature has never recognized equitable estoppel as a basis to toll a statute of limitations under Iowa Code § 614.1, equitable estoppel has been part of our law dating back almost to the time of the founding. *See Mormann*, 913 N.W.2d at 567.

Under the discovery rule, which we have applied for more than a half-century, a limitations period does not begin to run until the plaintiff discovers,

or with reasonable diligence should have discovered, the injury giving rise to the claim. *See Chrischilles v. Griswold,* 150 N.W.2d 94, 100 (Iowa 1967), *superseded by statute on other grounds,* 1975 Iowa Acts ch. 239, § 26 (codified at Iowa Code § 614.1(9) (1977)), *as recognized in Langner v. Simpson,* 533 N.W.2d 511 (Iowa 1995). We have applied the discovery rule to a wide assortment of legal claims. *See, e.g., Mormann,* 913 N.W.2d at 567 (Iowa Civil Rights Act claims); *Hallett Constr. Co. v. Meister,* 713 N.W.2d 225, 231 (Iowa 2006) (fraud); *Trobaugh v. Sondag,* 668 N.W.2d 577, 580–81 (Iowa 2003) (legal malpractice); *Vachon v. State,* 514 N.W.2d 442, 445 (Iowa 1994) (Iowa Tort Claims Act claims); *Franzen v. Deere & Co.,* 334 N.W.2d 730, 732 (Iowa 1983) (products liability); *Brown v. Ellison,* 304 N.W.2d 197, 201 (Iowa 1981) (express and implied warranties). Stated simply, the argument that courts cannot exercise their constitutional authority in a way that alters the working of statutes of limitations requires one to ignore an awful lot of caselaw going back an awfully long time.

The rules of civil procedure similarly include a tolling provision that has no grounding in a statute. Rule 1.277 provides that the statute of limitations tolls for all class members when another person files a lawsuit asserting a class action claim. Iowa R. Civ. P. 1.277. The running of the limitations period does not resume until one of several triggering events—again, found only in the rule— occurs. *Id.*

The defendants argue that the supreme court lacked power to toll the limitations period because the legislature had failed to delegate any such authority to it in Iowa Code chapter 29C. Chapter 29C grants a lengthy list of emergency powers to the Governor, among them the power to declare a disaster emergency as Governor Reynolds did here. *See, e.g.,* Iowa Code § 29C.6. In the entirety of chapter 29C, the supreme court is mentioned only once, in § 29C.4,

and even then only to require that the court "promulgate rules" to ensure that people taken into custody in a "public disorder emergency" have their constitutional rights protected. *Id.* § 29C.4. Among many deficiencies with the defendants' argument, the legislature cannot constrict power granted to the supreme court in the constitution—which is "the supreme law of the State"—by passing a statute in conflict with the grant of constitutional authority. Iowa Const. art. V, § 4; *id.* art. XII, § 1. What's more, as it relates to the supreme court, § 29C.4 does not confer any actual power. It instead simply directs the supreme court to take a specific action ("shall promulgate rules") that becomes effective in the event of a public disorder emergency. Iowa Code § 29C.4. The supreme court already possesses the power to prescribe rules under Iowa Code § 602.4201. In short, chapter 29C places no constraint on the supreme court's authority to toll a limitations period during a public health emergency.

The highest courts of every state entered emergency orders during the COVID-19 pandemic that altered each court's practices.[7] Notably, twenty-two of these state court orders included provisions affecting the operation of statutory limitations periods.[8] Fifteen of those states used their constitutional authority to do so.[9] In only two such states (other than Iowa) has a party asserted a constitutional challenge to such a provision. In both instances, the state's highest court upheld the constitutionality of the provision.

---

[7]See Appendix A for all fifty states' emergency orders. Appendix A also identifies whether the state's highest court tolled the statute of limitations, and if so, under what authority.

[8]Those states are: Arizona, Arkansas, Delaware, Georgia, Hawaii, Illinois, Iowa, Maryland, Massachusetts, Michigan, Nevada, New Hampshire, New Jersey, North Carolina, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, and West Virginia.

[9]Those states are: Arizona, Arkansas, Delaware, Hawaii, Illinois, Iowa, Maryland, Massachusetts, Michigan, Nevada, New Hampshire, New Jersey, Oklahoma, Pennsylvania, and Texas.

The first such case, *Murphy v. Liberty Mutual Insurance,* addressed a challenge to an administrative order from the chief judge of Maryland's highest court that tolled all statutes of limitations for "the number of days that the courts are closed to the public due to the COVID-19 emergency." 274 A.3d 412, 427–28 (Md. 2022). This emergency closure—and thus the tolling period under the court's order—spanned 126 days. *Id.* at 429. The defendant argued, among other things, that the tolling provision violated the Maryland Constitution's separation of powers. *Id.* at 415–16.

Maryland's highest court upheld the constitutionality of the provision on several grounds. *Id.* The court first concluded that tolling fell within the court's rulemaking powers. *Id.* at 436–37. In Maryland, statutes of limitations are considered procedural rather than substantive. *Id.* (Our court, similarly, has recognized that "statutes of limitation are usually viewed as being procedural rather than substantive." *Harris v. Clinton Corn Processing Co.*, 360 N.W.2d 812, 814 (Iowa 1985).) The court held that the tolling provision related to an area of "practice and procedure" in which the court shared authority with the legislature. *Murphy,* 274 A.3d. at 437–38. It further concluded that the judicially created tolling doctrines that extended deadlines for filing suit for certain categories of claimants, such as the "discovery rule" and "judicial tolling," make clear that this is an area of shared authority. *Id.*

The court next discussed how its order fell within the court's administrative powers. *Id.* at 439–40. The court noted that its administrative powers included the ability to manage facilities and court personnel and to regulate the legal profession. *Id.* Because pandemic restrictions would inevitably limit access to courthouses and prevent litigants from meeting with their attorneys, the court concluded that its tolling provision fell with its

administrative authority. *Id.* After the court issued its order, it sent the order to the Maryland legislature, as required by Maryland law, for consideration. *Id.* The legislature raised no objection to the order. *Id.* Although Iowa has no requirement to send administrative orders to the Iowa legislature for consideration, our COVID-19 orders were all publicly promulgated. The Iowa legislature never took any action objecting to any of our supervisory orders or the tolling provisions contained within them. *Basquin*, 970 N.W.2d at 658.

Maryland's highest court further concluded that its tolling provision was consistent with the policy behind the statute of limitations. *Murphy*, 274 A.3d. at 441. The court described the order as "an effort to respect the period of limitations set by the General Assembly" to ensure "that the administrative obstacles faced by litigants and the courts during the early days of the pandemic did not effectively and retroactively shorten the period of limitations." *Id.* This consideration too, the court observed, tended to show that the court was acting in an administrative capacity in tolling the limitations period. *Id.*

More recently, the Michigan Supreme Court in *Carter v. DTN Management Co.* rejected a constitutional challenge to a statute of limitations provision in its COVID-19 administrative orders. ___ N.W.3d ___, ___, 2024 WL 3573516, at *8–9, *11 (Mich. July 29, 2024) (en banc). The administrative order at issue in *Carter* changed how the court calculated time for statutes of limitations and other filing deadlines, stating that "any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included." *Id.* at ___, 2024 WL 3573516, at *2 (quoting Mich. Sup. Ct. Admin. Order, *Order Extending Deadline for Commencement of Actions* (Mar. 23, 2020)). The state of emergency in Michigan (and thus the tolling period) lasted 101 days. *Id.* at ___, 2024 WL 3573516, at *2–4.

The Michigan Constitution vests its supreme court with the "general superintending control over all courts." *Id.* at ___, 2024 WL 3573516, at *6 (quoting Mich. Const. art. VI, § 4). The Michigan Supreme Court held that it had the authority to issue the order under its superintending power and its power to regulate practice and procedure in the state's courts. *Id.* at ___, 2024 WL 3573516, at *6. It observed that under Michigan law, the legislature "makes the policy determination of the time limit that plaintiffs have for seeking relief in our courts" but that the court "instructs how the time limits will be calculated." *Id.* at ___, 2024 WL 3573516, at *8. It determined that this calculation rule was procedural rather than substantive and thus fell under the rulemaking authority provided to the supreme court by statute. *Id.* at ___, 2024 WL 3573516, at *9–10. The court's administrative order effectively tolled the statute of limitations, but without characterizing the act as tolling. *See id.* at ___, 2024 WL 3573516, at *9.

The Michigan Supreme Court further held that the general power of "superintending control" over the courts provided it "with broad authority to address exigencies that affect the operation of the courts." *Id.* at ___, 2024 WL 3573516, at *6. Because the pandemic created a public health emergency, the court reasoned that it had the authority to provide direction on how the judicial system functioned under its superintending powers while the emergency continued: "COVID-19 was an exigent circumstance requiring this Court's action to safeguard our courts, and so [article VI,] § 4 [of the Michigan Constitution] authorized our exercise of this power in adopting the administrative orders." *Id.* at ___, 2024 WL 3573516, at *11.

The constitutional grounds rejecting the similar challenges in Maryland and Michigan generally apply with equal force in this case. Our court has

similarly recognized that the judiciary's inherent powers include the authority to act "when an emergency arises which the established methods cannot or do not instantly meet," *Flattery*, 268 N.W.2d at 874–75 (quoting *State ex rel. Hillis v. Sullivan*, 137 P. 392, 395 (Mont. 1913)), and that such action is reasonable when it "forestall[s] foreseeable difficulties which are imminently threatening the functions of [the] court," *id.* at 875 (quoting *McAfee v. State ex rel. Stodola*, 284 N.E.2d 778, 782 (Ind. 1972)). Like the courts in Maryland and Michigan, we arrive at a substantively similar conclusion in rejecting the separation-of-powers challenge in this case.

Brownell and Wessel argue that if we reject their separation-of-powers argument, we should nonetheless affirm the district court ruling because the tolling provision violated their due process rights. Procedural due process requires notice and an opportunity to be heard. *Bowers v. Polk Cnty. Bd. of Supervisors*, 638 N.W.2d 682, 690–91 (Iowa 2002). Brownell and Wessel argue that the supreme court "acted unilaterally" in entering the supervisory order and that they received no notice or opportunity to be heard on the tolling issue, in violation of their rights. But we long ago held that a party "does not ordinarily acquire any vested interest amounting to a property right in a remedy which a statute affords," including a right to a statute of limitations or a particular limitations period. *Berg v. Berg*, 264 N.W. 821, 824 (Iowa 1936). Indeed, if defendants possessed a right of due process to a particular limitations period, then arguably even *the legislature* could not have tolled the period here. The defendants' due process argument fails.

The tolling provision in our supervisory order responded to an unprecedented public health emergency. Its limited duration aligned with some of the most stringent pandemic restrictions (and, notably, with the duration of

the legislature's own suspension of its session). In adopting the tolling provision, we acted within the constitutional authority vested in the supreme court. In light of the tolling provision's validity, we hold that Rivas's lawsuit was timely filed and thus that the district court erred in granting Brownell and Wessel's motion to dismiss. We reverse the order of dismissal and remand the case.

**Reversed and Case Remanded.**

Christensen, C.J., and Waterman and Mansfield, JJ., join this opinion. McDonald, J., files an opinion concurring in the judgment, in which Oxley, J., joins. May, J., files a dissenting opinion.

## Appendix A

| State | Tolling order? | Authority to toll | Citation |
|---|---|---|---|
| Ala. | No | | Ala. Sup. Ct. Admin. Order, *In re: COVID-19 Pandemic Emergency Response* (Mar. 13, 2020), https://judicial.alabama.gov/docs/COV-19%20order%20FINAL.pdf [https://perma.cc/MH3W-LWZL] |
| Alaska | No | | Alaska Sup. Ct. Order, *Emergency Order re COVID-19: Relaxation and Suspension of Various Court Rules Based on the COVID-19 Pandemic* (Mar. 13, 2020), https://courts.alaska.gov/covid19/docs/sco1957.pdf [https://perma.cc/H9KQ-3UD2] |
| Ariz. | Yes | Const. | Ariz. Sup. Ct. Admin. Order, *In the Matter of Authorizing Limitation of Court Operations During a Public Health Emergency* (Mar. 18, 2020), https://www.azcourts.gov/Portals/22/admorder/Orders20/2020-48.pdf?ver=2020-03-18-160342-583 [https://perma.cc/R7KU-7QVN] |
| Ark. | Yes | Const. | Ark. Sup. Ct. Order, *In re Response to the COVID-19 Pandemic* (Mar. 20, 2020), https://www.arcourts.gov/sites/default/files/articles/COVID-19-PC-march-20.pdf [https://perma.cc/V4NQ-NZT9] |
| Cal. | No | | Cal. Jud. Council Order, *Statewide Order* (Mar. 23, 2020), https://newsroom.courts.ca.gov/sites/default/files/newsroom/2020-09/Statewide%20Order%20by%20the%20Chief%20Justice-Chair%20of%20the%20Judicial%20Council%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.pdf [https://perma.cc/C4EJ-6ZHL] |
| Colo. | No | | Colo. Sup. Ct. Order, *Order Regarding COVID-19 and Operation of Colorado State Courts* (Mar. 16, 2020), https://www.courts.state.co.us/userfiles/file/Media/Opinion_Docs/COVID-19%20Order%2016Mar2020(1).pdf |
| Conn. | No | | Conn. Sup. Ct. Notice, *Notice Regarding Amendment to Executive Order No. 7G* (Mar. 20, 2020), https://jud.ct.gov/HomePDFs/NoticeExecutiveOrderNo7G.pdf [https://perma.cc/Y454-3JHR] |
| Del. | Yes | Const. | Del. Sup. Ct. Admin. Order, *In re COVID-19 Precautionary Measures* (Mar. 22, 2020), https://courts.delaware.gov/forms/download.aspx?id=120578 [https://perma.cc/SXD3-9RE4] |
| Fla. | No | | Fla. Sup. Ct. Admin. Order, *In re: Response of the Florida State Courts System to Coronavirus Disease 2019 (COVID-19)* (Mar. 11, 2020), https://www.floridasupremecourt.org/content/download/631290/7174884/AOSC20-12.pdf [https://perma.cc/A5BS-DAH9] |
| Ga. | Yes | Stat. | Ga. Sup. Ct. Order, *Order Declaring Statewide Judicial Emergency* (Mar. 14, 2020), https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf [https://perma.cc/D6VH-M3WD] |

| Haw. | Yes | Const. | Haw. Sup. Ct. Order, *In the Matter of the Judiciary's Response to the COVID-19 Outbreak* (Mar. 20, 2020), https://www.courts.state.hi.us/wp-content/uploads/2020/03/032019_scmf-20-152_In_Re_COVID-19-deadline-extension.pdf [https://perma.cc/EY4B-RWUV] |
|------|-----|--------|---|
| Idaho | No | | Idaho Sup. Ct. Order, *In re: Emergency Reduction in Court Services and Limitation of Access to Court Facilities* (Apr. 22, 2020), https://isc.idaho.gov/EO/CERTIFIED-042220-Emergency-Reduction-Order.pdf [https://perma.cc/SK5W-CE25] |
| Ill. | Yes | Const. | Ill. Sup. Ct. Order, *Illinois Courts Response to COVID-19 Emergency* (Mar. 17, 2020), https://www.illinoiscourts.gov/resources/f642740e-1541-41e2-b7d0-efb52332c164/file [https://perma.cc/8QR8-WYGN] |
| Ind. | No | | Ind. Sup. Ct. & Ind. Ct. App. Order, *In the Matter of Administrative Rule 17 Emergency Relief for Indiana Trial Courts Relating to the 2019 Novel Coronavirus (COVID-19)* (Apr. 7, 2020), https://www.in.gov/courts/files/order-other-2020-20S-CB-123d.pdf [https://perma.cc/XG5R-U4ED] |
| Iowa | Yes | Const. | Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (May 22, 2020), https://www.iowacourts.gov/static/media/cms/file_stamped_Resumption_and_Priorit_03820 0E17241F.pdf [https://perma.cc/RU9W-WMZX] |
| Kan. | No | | Kan. Sup. Ct. Admin. Order, *Order Relating to District Court Operations in Counties Affected by a Stay-at-Home Order or Subject to a Directive Closing a County Courthouse or Other Judicial Office* (May 1, 2020), https://kscourts.gov/KSCourts/media/KsCourts/Orders/2020-PR-049.pdf [https://perma.cc/S82P-9TN4] |
| Ky. | No | | Ky. Sup. Ct. Order, *In re: Kentucky Court of Justice Response to COVID-19 Emergency* (Mar. 16, 2020), https://www.kycourts.gov/Courts/Supreme-Court/Supreme%20Court%20Orders/202008.pdf [https://perma.cc/X2JT-RAV5] |
| La. | No | | La. Sup. Ct. Order, *Order* (Mar. 16, 2020), https://www.lasc.org/COVID19/Orders/2020-03-16_LASCorder.pdf [https://perma.cc/6CYB-CDHG] |
| Me. | No | | Me. Sup. Jud. Ct. Order, *Pandemic Management Order* (Mar. 30, 2020), http://www.cleaves.org/PMOSJC2.1.pdf [https://perma.cc/7HEG-ABEX] |
| Md. | Yes | Const. | Md. Ct. App. Admin. Order, *Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters* (Apr. 3, 2020), https://www.mdcourts.gov/sites/default/files/admin-orders-archive/archivedin2022/20200403emergencytollingorsuspensionofstatutesoflimitationsetc.pd f [https://perma.cc/SXX9-RH69] |
| Mass. | Yes | Const. | Mass. Sup. Jud. Ct. Order, *In re: COVID-19 (Coronavirus) Pandemic* (Apr. 6, 2020), https://www.mass.gov/doc/repealed-sjc-order-authorizing-use-of-electronic-signatures-by-attorneys-and-self-represented/download |
| Mich. | Yes | Const. | Mich. Sup. Ct. Admin. Order, *Order Extending Deadline for Commencement of Actions* (Mar. 23, 2020), https://www.courts.michigan.gov/4a6ce4/siteassets/rules-instructions- |

| | | | |
|---|---|---|---|
| | | | administrative-orders/proposed-and-recently-adopted-orders-on-admin-matters/adopted-orders/2020-08_2020-03-23_formattedorder_ao2020-3.pdf [https://perma.cc/HN6K-E9J9] |
| Minn. | No | | Minn. Sup. Ct. Order, *Continuing Operations of the Minnesota Judicial Branch Under Emergency Executive Order No. 20-33* (Apr. 9, 2020), https://mncourts.gov/mncourtsgov/media/CIOMediaLibrary/News%20and%20Public%20Notices/Orders/Administrative-Order-Continuing-Operations-of-the-Minnesota-Judicial-Branch-Under-Emergency-Executive-Order-No-20-33.pdf [https://perma.cc/3F72-548E] |
| Miss. | No | | Miss. Sup. Ct. Order, *In re: Emergency Order Related to Coronavirus (COVID-19)* (Mar. 13, 2020), https://courts.ms.gov/appellatecourts/docket/sendPDF.php?f=700_490703.pdf&c=91465&a=N&s=2 |
| Mo. | No | | Mo. Sup. Ct. Order, *In re: Response to the Coronavirus Disease (COVID-19) Pandemic* (Mar. 22, 2020), https://www.courts.mo.gov/page.jsp?id=153093#:~:text=art.,well%20as%20grand%20jury%20proceedings [https://perma.cc/5VAN-9WTU] |
| Mont. | No | | Mont. Sup. Ct. Order, *Order* (Mar. 13, 2020), https://courts.mt.gov/Portals/189/docs/COVID-19%203-13.pdf |
| Neb. | No | | Neb. Sup. Ct. Admin. Order, *In re Novel Coronavirus and COVID-19 Disease* (Mar. 12, 2020), https://supremecourt.nebraska.gov/sites/default/files/Administration/emergency/order3.12.20.pdf [https://perma.cc/BK27-VMNM] |
| Nev. | Yes | Const. | Nev. Sup. Ct. Order, *In re Coronavirus Emergency and Its Impact on the Courts* (Apr. 10, 2020), https://caseinfo.nvsupremecourt.us/document/view.do?csNameID=58467&csIID=58467&deLinkID=765511&onBaseDocumentNumber=20-13788 |
| N.H. | Yes | Const. | N.H. Sup. Ct. Order, *Revised and Amended Order Suspending In-Person Court Proceedings Related to New Hampshire Superior Court and Restricting Public Access to Courthouses* (Mar. 28, 2020), https://courts-state-nh-us.libguides.com/ld.php?content_id=55731266 [https://perma.cc/36G9-CHEN] |
| N.J. | Yes | Const. | N.J. Sup. Ct. Order, *Order (a) Permitting the Extension of Civil and Family (Dissolution) Discovery Deadlines and (b) Tolling Filing Deadlines Through March 27 for All Matters* (Mar. 17, 2020), https://www.njcourts.gov/sites/default/files/notices/2020/03/n200317d.pdf?cb=72988eaa [https://perma.cc/G76Y-5WGS] |
| N.M. | No | | N.M. Sup. Ct. Order, *In the Matter of Precautionary Measures for Court Operations in the New Mexico Judiciary During the COVID-19 Public Health Emergency* (Mar. 17, 2020), https://supremecourt.nmcourts.gov/wp-content/uploads/sites/2/2024/03/Order-No.-20-8500-002-In-the-Matter-of-Precautionary-Measures-for-Court-Operations-in-the-New-Mexico-Judiciary-during-the-COVID-19-Public-Health-Emergency-3.17.20.pdf [https://perma.cc/TMW9-RBNF] |

| N.Y. | No | | N.Y. Ct. App. Admin. Order, *Administrative Order of the Chief Administrative Judge of the Courts* (Mar. 22, 2020), https://www.nystla.org/docDownload/1578700 [https://perma.cc/4456-P6FM] |
|---|---|---|---|
| N.C. | Yes | Stat. | N.C. Sup. Ct. Order, *Order of the Chief Justice of the Supreme Court of North Carolina* (Apr. 13, 2020), https://www.nccourts.gov/assets/news-uploads/COVID-19%20-%2013%20April%202020%20-%207A-39%28b%29%281%29%20Order%20%28FINAL%29.pdf?.u_u1lNIMPsEI6sKza5B6f7ZiZRcBH.D |
| N.D. | No | | N.D. Sup. Ct. Order, *Coronavirus Pandemic* (June 9, 2020), https://www.ndcourts.gov/legal-resources/rules/ndsupctadminorder/25-5 [https://perma.cc/2VQE-EPAT] |
| Ohio | No | | Ohio Sup. Ct. Admin. Actions, *In re Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court and Use of Technology* (Mar. 27, 2020), http://www.supremecourt.ohio.gov/rod/docs/pdf/0/2020/2020-Ohio-1166.pdf |
| Okla. | Yes | Const. | Okla. Sup. Ct. & Okla. Ct. Crim. App. Joint Order, *First Emergency Joint Order Regarding the COVID-19 State of Disaster* (Mar. 16, 2020), https://www.okbar.org/wp-content/uploads/2020/03/SC-First-Emergency-Joint-Order-Regarding-the-COVID-19-State-of-Disaster.pdf [https://perma.cc/Z3M2-L5K7] |
| Or. | Yes | Stat. | Or. Sup. Ct. Chief Just. Order, *Order Extending Statutory Time Periods and Time Requirements in DUII Diversions* (Oct. 16, 2020), https://www.courts.oregon.gov/Documents/CJO_2020-041.pdf [https://perma.cc/CJT7-E54V] |
| Pa. | Yes | Const. | Press Release, Pa. Sup. Ct., *Pennsylvania Supreme Court Closes Courts to the Public Statewide* (Mar. 18, 2020), https://www.pacourts.us/news-and-statistics/news/news-detail/1018/pennsylvania-supreme-court-closes-courts-to-the-public-statewide |
| R.I. | No | | R.I. Sup. Ct. Exec. Order, *Executive Order (COVID-19 Pandemic Response)* (Mar. 17, 2020), https://www.courts.ri.gov/Executive%20Orders/20-04.pdf [https://perma.cc/5XFR-BDQQ] |
| S.C. | No | | S.C. Sup. Ct. Order, *Re: Operation of the Trial Courts During the Coronavirus Emergency* (Apr. 3, 2020), https://www.sccourts.org/opinions-orders/court-orders/order-detail/?order=2020-04-03-01 [https://perma.cc/CZ5A-4X2Z] |
| S.D. | Yes | Stat. | S.D. Sup. Ct. Order, *Order Suspending 180-Day Rule (23A-44-5.1)* (Mar. 13, 2020), https://ujs.sd.gov/uploads/news/COVID19OrderSuspending180DayRule.pdf [https://perma.cc/N73D-V4GV] |
| Tenn. | Yes | Stat. | Tenn. Sup. Ct. Order, *Order Continuing Suspension of In-Person Court Proceedings and Extension of Deadlines* (Mar. 25, 2020), http://tncourts.gov/sites/default/files/docs/order_-_2020-03-25t120936.486.pdf [https://perma.cc/AZ9L-VLWS] |
| Tex. | Yes | Const. | Tex. Ct. Crim. App. Order, *First Emergency Order Regarding the COVID-19 State of Disaster* (Mar. 13, 2020), http://www.txcourts.gov/media/1446056/209042.pdf [https://perma.cc/92XL-ZLWV] |
| Utah | No | | Utah Sup. Ct. & Utah Jud. Council Admin. Order, *Administrative Order for Court Operations During Pandemic* (June 26, 2020), https://jenningsandmedura.com/wp- |

| | | | |
|---|---|---|---|
| | | | content/uploads/2020/07/20200626-Amended-Pandemic-Administrative-Order.pdf [https://perma.cc/H7EA-LWEZ] |
| Vt. | No | | Vt. Sup. Ct. Admin. Order, *Declaration of Judicial Emergency and Changes to Court Procedures* (Mar. 16, 2020), https://casetext.com/rule/vermont-court-rules/vermont-administrative-orders-of-the-supreme-court/rule-administrative-order-no-49-declaration-of-judicial-emergency-and-changes-to-court-procedures [https://perma.cc/7CY4-UFNN] |
| Va. | Yes | Stat. | Va. Sup. Ct. Order, *In re: Order Declaring a Judicial Emergency in Response to COVID-19 Emergency* (Mar. 16, 2020), https://www.sussexcountyva.gov/uploads/docs/COVID-19.pdf [https://perma.cc/9SRM-K77G] |
| Wash. | No | | Wash. Sup. Ct. Amended Order, *In the Matter of Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency* (Mar. 20, 2020), http://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Supreme%20Court%20Emergency%20Order%20re%20CV19%20031820.pdf |
| W. Va. | Yes | Stat. | W. Va. Sup. Ct. Admin. Order, *Re: Judicial Emergency Declared, Second Amended Order* (Apr. 22, 2020), https://www.publicjustice.net/wp-content/uploads/2020/05/Supreme-Court-of-Appeals-of-West-Virginia-Judicial-Emergency-Order-Amended-Re-Remote-Proceedings-and-Public-Access-Issued-April-22-2020.pdf [https://perma.cc/6XS6-6ZFN] |
| Wis. | No | | Wisc. Sup. Ct. Order, *In the Matter of an Interim Rule re Suspension of Deadlines for Non-Criminal Jury Trials Due to the COVID-19 Pandemic: Public Hearing Notice* (Mar. 31, 2020), https://www.wicourts.gov/sc/rulhear/DisplayDocument.pdf?content=pdf&seqNo=256993 |
| Wyo. | No | | Wyo. Sup. Ct. Order, *Second Order Amending March 18, 2020 Temporary Plan to Address Health Risks Posed by the COVID-19 Pandemic* (Apr. 30, 2020), https://www.courts.state.wy.us/wp-content/uploads/2020/04/COVID-19-Order-4-30-20-Amend.pdf [https://perma.cc/5JGG-WXTD] |

**McDonald, Justice (concurring in the judgment).**

This is the second time this constitutional question has come before the court. In *Dickey v. Hoff*, the court divided evenly on the question of whether the court's supervisory order that tolled the statute of limitations was unconstitutional. No. 21–0859, 2022 WL 12127101 (Iowa Oct. 21, 2022); *see also* Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* 14 (May 22, 2020), https://www.iowacourts.gov/collections/499/files/1093/embedDocument/ [https://perma.cc/RU9W-WMZX]. At that time, it was my view that the challenged provision of the supervisory order violated the separation of powers clause in the Iowa Constitution and was void. *See* Iowa Const. art. III, Three Separate Departments, § 1; *id.* art. XII, § 1. Upon further study and reflection, I have come to conclude that the challenged provision of the supervisory order is not irreconcilable with the separation of powers clause in the state constitution. *See Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 9 N.W.3d 37, 48–49 (Iowa 2024) ("A court's ability to nullify a law depends entirely on whether a law is irreconcilable with a particular provision of the constitution."); *Stewart v. Bd. of Supervisors*, 30 Iowa 9, 15 (1870) (stating the court will "declare a law unconstitutional *only* when it is *clearly, palpably and plainly inconsistent* with the provisions of that instrument" (quoting *Morrison v. Springer*, 15 Iowa 304 (1863))). I come to that conclusion for reasons different than those expressed by the court. I thus write separately.

## I.

The Iowa Constitution divides "[t]he powers of the government of Iowa . . . into three separate departments—the legislative, the executive, and the

judicial." Iowa Const. art. III, Three Separate Departments, § 1. The constitution further provides that "no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others." *Id.* "The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system." *State ex rel. White v. Barker*, 89 N.W. 204, 208 (Iowa 1902). It is the primary constitutional "safeguard against tyranny." *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 873 (Iowa 1978) (en banc).

The constitution vests the legislative power of the state in the general assembly. Iowa Const. art. III, Legislative Department, § 1. The "[l]egislative power is the power to make, alter, and repeal laws and to formulate legislative policy." *In re C.S.*, 516 N.W.2d 851, 859 (Iowa 1994). Exercising its legislative powers, the general assembly has almost plenary power to protect the "lives, limbs, health, comfort, and quiet of all persons" within the state and to promote "domestic order, morals, health, and safety." *State v. Schlenker*, 84 N.W. 698, 699 (Iowa 1900) (quoting *R.R. v. Husen*, 95 U.S. 465, 471 (1877)); *see also Fuller v. Chi. & N.W. R.R.*, 31 Iowa 187, 209 (1871) (stating that the government may act "to preserve the peace, health, morals and property of its people, and to protect them from imposition and injustice").

"The supreme executive power of this state shall be vested in . . . the governor of the state of Iowa." Iowa Const. art. IV, § 1. "Executive power is the power to put the laws enacted by the legislature into effect." *In re C.S.*, 516 N.W.2d at 859. The constitution vests the Governor with duties and powers, such as the duty to serve as "commander in chief of the militia, the army, and navy of this state" and the "power to grant reprieves, commutations and pardons, after

conviction." Iowa Const. art. IV, §§ 7, 16. These are just two of the Governor's duties and powers among many others. *See id.* art. IV, §§ 7–13, 16. The primary constitutional duty and power of the Governor is to ensure "that the laws are faithfully executed." *Id.* art. IV, § 9.

The judicial power of the state is vested "in a supreme court, district courts, and such other courts, inferior to the supreme court, as the general assembly may, from time to time, establish." *Id.* art. V, § 1; *see also id.* art. V, § 4. The judicial power, generally, "is the power to decide and pronounce a judgment and carry it into effect." *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 261 (Iowa 2002). Included within this power is "the power to construe and interpret the Constitution and laws, and to apply them and decide controversies." *State v. Thompson*, 954 N.W.2d 402, 410–11 (Iowa 2021) (quoting *Hutchins v. City of Des Moines*, 157 N.W. 881, 887 (Iowa 1916)). Also included within the judicial power is the court's equitable power. *See State ex rel. Att'y Gen. of Iowa v. Autor*, 991 N.W.2d 159, 165 (Iowa 2023) (discussing the court's equitable powers); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 269–70 (Iowa 2010) (discussing the court's equitable powers with respect to a class of persons). The court's equitable power is broad. *See Helton v. Crawley*, 41 N.W.2d 60, 68–69 (Iowa 1950) (discussing the court's "broad and highly equitable powers"). But it is not unlimited. *See, e.g., In re Marriage of Martin*, 681 N.W.2d 612, 619 (Iowa 2004) ("The court also has no broad equitable powers to divide property accumulated by unmarried persons based on cohabitation."); *In re Marriage of Gallagher*, 539 N.W.2d 479, 485 (Iowa 1995) (en banc) (Ternus, J., dissenting) ("However, even our equitable powers should be exercised in a principled fashion, consistent with precedent; equity is not an

opportunity to do whatever we think is right regardless of the law."). And it is not unlimitable.

The legislature may limit or modify the court's equitable powers within constitutional limits. *See Worthington v. Kenkel*, 684 N.W.2d 228, 232–33 (Iowa 2004) (discussing the legislature's ability to displace general equitable principles and rules). It is presumed, however, that the court retains its equitable power in all circumstances in the absence of a clear legislative statement to the contrary. *See Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 182 (Iowa 2001) (en banc) ("We should not limit the applicability of equitable principles without a valid and clear legislative mandate."). When the legislature clearly expresses its intent to limit or modify the judiciary's equitable power, "the conditions specified in the statute supersede the traditional equitable requirements." *Id.* at 181; *see also Hagge v. Iowa Dep't of Revenue & Fin.*, 539 N.W.2d 148, 152 (Iowa 1995) ("We refuse to exercise equitable powers to order DOR to take an action unambiguously proscribed by Iowa law.").

## II.

With that background, I turn to the question presented: whether the provision in the supervisory order that tolled the statute of limitations violated the constitutional separation of powers.

The state constitution provides that it "shall be the supreme law of the state, and any law inconsistent therewith, shall be void." Iowa Const. art. XII, § 1. By its own terms, this provision applies to "any law"—whether originating in the legislative, executive, or judicial departments—and provides that "any law" inconsistent with the constitution "shall be void." *Id.* Under this provision, this court is obligated to adjudge the constitutionality of its own law—rules, orders,

or judicial decisions—according to the same standard we adjudge the constitutionality of the laws of the other departments of the government.

Our caselaw has developed a general framework for evaluating separation-of-powers challenges. "[T]he separation-of-powers doctrine has three general aspects." *State v. Tucker*, 959 N.W.2d 140, 148 (Iowa 2021). It "prohibits one department of the government from exercising powers that are clearly forbidden to it." *Id.* It "prohibits one department of the government from exercising powers granted by the constitution to another department of the government." *Id.* It also "prohibits one department of the government from impairing another in the performance of its constitutional duties." *Id.* While our cases have established these broad classes of prohibited activities, our cases have also established that the resolution of any separation-of-powers challenge is context-dependent and fact-specific. *See id.*

There is no dispute that establishing statutes of limitations is solely a legislative power with which courts have no power to interfere. *See Drahaus v. State*, 584 N.W.2d 270, 275 (Iowa 1998) ("[T]he tolling of a statute of limitations is purely statutory, and we are not free to expand the concept to avoid hardships." (*quoting Harrington v. Toshiba Mach. Co.*, 562 N.W.2d 190, 192 (Iowa 1997))). There is also no dispute that statutes of limitations, like all laws, are enacted within an ecosystem of "preexisting principles, statutes, precedents, customs, and practices that g[i]ve meaning and operational effect to the text" of the law. *Lennette v. State*, 975 N.W.2d 380, 403 (Iowa 2022) (McDonald, J., concurring). One part of that legal ecosystem is the court's equitable power to toll statutes of limitations in extraordinary circumstances. *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507 (2017) ("Of course, not all tolling rules derive from legislative enactments. Some derive from the traditional power

of the courts to 'apply the principles . . . of equity jurisprudence.' " (omission in original) (quoting *Young v. United States*, 535 U.S. 43, 50 (2002))); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("As applied to federal statutes of limitations, the inquiry begins with the understanding that Congress 'legislate[s] against a background of common-law adjudicatory principles.' " (alteration in original) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991))).

"As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano*, 572 U.S. at 10. "It is hornbook law that limitations periods," even though creatures of statute, are subject to equitable tolling unless equitable tolling is "inconsistent with the text of the relevant statute." *Young*, 535 U.S. at 49 (quoting *United States v. Beggerly*, 524 U.S. 38, 48 (1998)). One treatise explained:

> Limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute. The statute of limitations, the running of which would otherwise bar the cause of action, may be tolled when such result is consonant with the legislative scheme, even though the right of action is given by statute. Tolling will not be allowed, on the other hand, where it is determined that it would not be in consonance with the legislative scheme.

54 C.J.S. *Limitations of Actions* § 132, at 161 (2020) (footnotes omitted); *see also Lozano*, 572 U.S. at 10–11.

The general assembly has not expressed any intent to displace this court's equitable power to toll the general statute of limitations. *See Max 100 L.C.*, 621 N.W.2d at 182. In the absence of any expression of such intent, this court's historical equitable power to toll the general statute of limitations persists. *See Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 567 (Iowa 2018) ("As early as

1875, we recognized equitable estoppel as providing a vehicle to toll a statute of limitations."). Indeed, "equitable exceptions to limitations statutes are common in Iowa." *Id.* at 566. Because the general assembly retains the authority to disallow judicial equitable tolling when it chooses to do so, judicial equitable tolling—properly understood—supplements, rather than displaces, the legislature's authority to establish statutes of limitations. Stated differently, judicial equitable tolling of statutes of limitations does not violate the historical separation of powers.

Having concluded that this court has general equitable power to toll statutes of limitations and that the exercise of this general equitable power does not violate the separation-of-powers doctrine, the more difficult question presented is whether the challenged provision in the supervisory order was in fact a constitutional exercise of this court's equitable power. Two considerations militate against that conclusion. First, the court's equitable power is usually exercised on a case-by-case basis. *See Worthington*, 684 N.W.2d at 232–33 (stating that "equitable principles surfaced to provide a court with the needed ability to fashion a remedy based on 'the necessities of the particular case' and the unique competing concerns between the parties" (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987))). Second, and related to the first point, the court exercised its equitable power in a supervisory order rather than in a decision or opinion issued after adjudging the particular facts and circumstances of a single case.

Despite these two concerns, I cannot now conclude that the defendants are entitled to relief. "Where, as here, the separation-of-powers question arises out of [the action of] this court, 'this court shall make its own evaluation, based on the totality of circumstances, to determine whether that power has been

exercised appropriately.' " *Thompson*, 954 N.W.2d at 409 (quoting *Flattery*, 268 N.W.2d at 872). In considering the totality of the circumstances, it is the defendants' burden to prove that this court, in adopting the challenged provision of the supervisory order, exercised "powers that are clearly forbidden" to it or exercised "powers granted by the constitution to another branch." *Klouda*, 642 N.W.2d at 260 (quoting *State v. Phillips*, 610 N.W.2d 840, 842 (Iowa 2000) (en banc)). The defendants have not made such a showing.

As demonstrated above, this court has the equitable power to toll statutes of limitations in an extraordinary circumstance. The pandemic was such an extraordinary circumstance. By the time this court authorized the supervisory order at issue, the President had already declared a national emergency, and the Governor had already declared a state of public health disaster emergency. The Governor's Proclamation of Disaster Emergency identified the facts supporting the proclamation, including, but not limited to: that cases of COVID-19 had been confirmed in Iowa; that the Iowa Department of Public Health had determined that community spread was occurring within Iowa; that public resources were being exhausted in responding to the emergency; that person-to-person spread posed a possibility of severe illness, disability, and death to certain Iowans; and that the risk of transmission may be substantially reduced by separating and restricting the movement of persons. State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Mar. 17, 2020), https://orghomelandsecurity.iowa.gov/wp-content/uploads/2023/01/COVID-Proc-2020-03-17.pdf [https://perma.cc/R6TX-BEQY]. The net effect of the federal and state emergency response to the pandemic was to substantially restrict business and personal activity and to substantially restrict the freedom of movement within the country and the state. This court was authorized to take judicial notice of the public health emergency and the

federal and state responses to the same. *See Faber v. Loveless*, 88 N.W.2d 112, 115 (Iowa 1958) (taking judicial notice of a national emergency); *In re State Bank of Cent. City*, 294 N.W. 260, 267–68 (Iowa 1940) (taking judicial notice of the Great Depression and banking crisis); *First Tr. Joint Stock Land Bank of Chi. v. Arp*, 283 N.W. 441, 442 (Iowa 1939) (per curiam) ("Under such existing conditions the Chief Executive of the State declared the existence of a great emergency and asked the Legislature to provide a remedy. The Legislature in providing a remedy and enacting the so-called Moratorium Act also declared that an emergency existed, and this court took judicial notice of the conditions existing and sustained that Act of the Legislature."); *Bankers Life Co. v. City of Emmetsburg*, 278 N.W. 311, 319 (Iowa 1938) (taking judicial notice of economic emergency and shrinkage of real estate market values).

While the court's equitable power is typically, almost exclusively, exercised on a particularized basis in an individual case, the pandemic was an extraordinary circumstance that allowed broader relief. In issuing the supervisory order, the court took judicial notice that the pandemic subjected all Iowans to the same health and safety risks. The court also took judicial notice of the federal and state emergency proclamations that subjected all Iowans to the same physical and legal restrictions. In the absence of the supervisory order, had Rivas asked the district court in this case to toll the statute of limitations based on COVID-19-related difficulties she faced in timely filing her petition, the district court would have been within its equitable authority to grant that motion on an individualized basis based on judicial notice of the emergency. The court's supervisory order merely provided such relief on a class basis based on universally applicable facts. That we have previously applied equitable exceptions only under the discovery rule and equitable estoppel does not detract

from the judicial authority to apply equitable tolling in other extraordinary circumstances.

Now, whether there were in fact exceptional circumstances that warranted the exercise of federal and state emergency powers is a moot point because such powers were exercised, and, in any event, that question is largely immaterial to the very different question of whether the exercise of this court's equitable powers on judicially noticed facts violated the separation of powers. On the relevant question, the defendants have not established that the exercise of this court's equitable power to provide relief on a classwide basis during a declared federal and state emergency rather than on an individual basis violated the constitutional separation of powers. *See Tucker*, 959 N.W.2d at 148; *Armijo v. Bronson Methodist Hosp.*, 4 N.W.3d 789, 797 (Mich. Ct. App. 2023) (Riordan, J., concurring) (discussing COVID-19 orders and acknowledging that "[i]t might be true that the administrative orders were constitutional under the judiciary's general equitable powers to toll a statute of limitations"). *But see Carter v. DTN Mgmt. Co.*, ___ N.W.3d ___, ___, 2024 WL 3573516, at *19 (Mich. July, 29 2024) (en banc) (Viviano, J., dissenting) ("On the other hand, 'a categorical redrafting of a statute in the name of equity violates fundamental principles of equitable relief and is a gross departure from the proper exercise of the "judicial power." ' " (quoting *Devillers v. Auto Club Ins.*, 702 N.W.2d 539, 556 n.65 (Mich. 2005))).

### III.

The majority upholds the challenged portion of the supervisory order but for a different reason. The majority concludes that this court's inherent authority to supervise and administer practice and procedure in all of Iowa's courts gave this court the legal authority to toll the statute of limitations. This is merely a plea "for a resulting power to deal with a crisis or an emergency according to the

necessities of the case, the unarticulated assumption being that necessity knows no law." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 646 (1952) (Jackson, J., concurring in the judgment). I disagree with the majority's rationale.

It is not disputed that the judicial department has the authority to regulate practice and procedure in Iowa's courts. The judicial department has constitutional authority to supervise and administer "all inferior judicial tribunals throughout the state." Iowa Const. art. V, § 4. The judicial department has statutory authority to "prescribe all rules of pleading, practice, evidence, and procedure, and the forms of process, writs, and notices, for all proceedings in all courts of this state." Iowa Code § 602.4201(1) (2020). The judicial department possesses inherent authority to craft protocols and procedures in its courts. *See State v. Dahl*, 874 N.W.2d 348, 353 (Iowa 2016) (exercising supervisory authority to create a protocol for appointment of a private investigator for an indigent defendant); *see also Hammon v. Gilson*, 291 N.W. 448, 451–52 (Iowa 1940) ("[C]ourts have the inherent power to prescribe such rules of practice . . . to facilitate the administration of justice . . . .").

The judicial department's constitutional, statutory, and inherent authority to supervise and administer practice and procedure in all of Iowa's courts is not exclusive, or even supreme, however. Article V, section 14 of the Iowa Constitution provides that it is "the duty of the general assembly . . . to provide for a general system of practice in all the courts of this state." The judicial department's constitutional, statutory, and inherent authority to administer and supervise practice and procedure in its courts must give way where the legislative department has acted. *See id.*; Iowa Code § 602.4202(4) ("If the general assembly enacts a bill changing a rule or form, the general assembly's enactment

supersedes a conflicting provision in the rule or form as submitted by the supreme court."). The majority's separation-of-powers analysis fails to acknowledge this critical point: this court's power to supervise and administer the courts controls only "[w]here the legislature has not acted." *Iowa C.L. Union v. Critelli*, 244 N.W.2d 564, 569 (Iowa 1976) (en banc); *see also Thompson*, 954 N.W.2d at 415 ("Pursuant to the constitutional text and historical practice, our precedents continue to recognize the 'legislature possesses the fundamental responsibility to adopt rules of practice for our courts.'" (quoting *Butler v. Woodbury County*, 547 N.W.2d 17, 20 (Iowa Ct. App. 1996))).

The majority's failure to acknowledge this critical point sends it down the wrong path. The legislature acted. It adopted statutes of limitations. This court's constitutional, statutory, and inherent supervisory and administrative authority over the courts are an insufficient source of authority to overcome, suspend, or toll the statutes of limitations because those sources of authority generally are inferior to statutes. The fact that the supervisory order was administered during a time of crisis does not change this analysis. "Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved." *Home Bldg. & Loan Ass'n v Blaisdell*, 290 U.S. 398, 425 (1934). "Inherent powers are necessary for courts to properly function as a separate branch of government[] but cannot be used to offend the doctrine of separation of powers by usurping authority delegated to another branch of government." *State v. Hoegh*, 632 N.W.2d 885, 888 (Iowa 2001); *see also Carlisle v. United States*, 517 U.S. 416, 425–26 (1996) (stating that courts cannot invoke inherent powers to circumvent or disregard constitutional or statutory procedures); *Flattery*, 268 N.W.2d at 878–79 (Uhlenhopp, J., concurring specially) ("[T]he words 'inherent power' do not

indicate some mysterious authority placing the judiciary above the separation of powers.").

An example demonstrates why this court's constitutional, statutory, and inherent administrative and supervisory powers over the courts in this state cannot serve as a source of power to toll statutes of limitations. This court's administrative and supervisory powers extend only to the superintendency of the processes and procedures of Iowa courts. *See* Iowa Code § 602.4201(1); *Thompson,* 954 N.W.2d at 411. Thus, in *State v. Basquin,* we concluded that the provision in our supervisory orders "allowing written guilty pleas to felonies fall well within our court's constitutional and inherent powers, especially during a public health emergency caused by a global pandemic that shut down jury trials and severely limited in-person court operations." 970 N.W.2d 643, 654 (Iowa 2022). Unlike the written guilty plea procedure at issue in *Basquin,* however, statutes of limitations do not involve the processes and procedures in Iowa's courts. Instead, statutes of limitations establish the claims processing law to be applied in a case even in courts not subject to this court's constitutional, statutory, and inherent supervisory and administrative powers. For example, in *Gale v. State Farm Fire & Casualty Co.*, the United States District Court for the Southern District of Iowa held that this court's supervisory order tolled the limitations period in a case pending in that court. No. 4:21–cv–00168, 2021 WL 6752301, at *4–5 (S.D. Iowa Aug. 6, 2021). This court's supervisory and administrative power over the courts in this state cannot give this court the authority to change the law applicable in a federal district court. This strongly suggests the majority has misidentified the true source of the court's authority to toll the statute of limitations. *See Carter,* ___ N.W.3d at ___, 2024 WL 3573516,

at *18–19 (Viviano, J., dissenting) (explaining that supervisory authority extends only to inferior tribunals).

The only possible legitimate source of power to support a change in the law to be applied in Iowa's courts that would also result in a change in the law to be applied in federal district courts applying Iowa law is this court's equitable power to make law and toll the statutes of limitations in the extraordinary circumstances presented during the pandemic. In the absence of such equitable power, "[i]t [was] not within the power of the district court or our court to toll or repeal the statute of limitations." *Emery Transp. Co. v. Baker*, 136 N.W.2d 529, 532 (Iowa 1965).

IV.

"I am quite unimpressed" with the majority's claim that this court has the supervisory, administrative, and inherent authority to toll the statute of limitations. *Youngstown Sheet & Tube Co.*, 343 U.S. at 653 (Jackson, J., concurring in the judgment). "The constitutional separation of powers serves as 'a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict.'" *Tucker*, 959 N.W.2d at 169 (McDermott, J., concurring specially) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 239 (1995)). The majority's reliance on its supervisory, administrative, and inherent authority to override statutes lowers the walls and muddies the distinctions because "[s]uch power either has no beginning or it has no end. If it exists, it need submit to no legal restraint." *Youngstown Sheet & Tube Co.*, 343 U.S. at 653 (Jackson, J., concurring in the judgment). In contrast, this court's equitable power is historically grounded and limited, *see Askvig v. Snap-On Logistics Co.*, 967 N.W.2d 558, 562–63 (Iowa 2021) (discussing the COVID-19 supervisory orders

and explaining the equitable power can toll the statute of limitations but not jurisdictional deadlines), and the exercise of this long-established power via supervisory order under the circumstances presented did not clearly violate the Iowa Constitution. While the majority reaches the right result, it does so for reasons that take "a step in that wrong direction." *Youngstown Sheet & Tube Co.*, 343 U.S. at 653 (Jackson, J., concurring in the judgment). For these reasons, I concur in the judgment.

Oxley, J., joins this concurrence in the judgment.

**May, Justice (dissenting).**

The COVID-19 pandemic presented challenges that were both unprecedented and extraordinarily complex. I am grateful to our leaders—including the justices and staff of the Iowa Supreme Court—for their valiant service in guiding us through those complicated times.

By comparison, the case before us is relatively simple. The learned trial judge, the Honorable Scott D. Rosenberg, resolved the case in a three-page order. He observed that the Iowa Supreme Court lacks the power to extend statutes of limitations "to avoid hardships." And he concluded that "the Iowa Supreme Court supervisory order extending the time for filing petitions such as the one at bar is beyond the power of the Iowa Supreme Court."

Judge Rosenberg was right. The power to revise statutes is held by the people's elected representatives in the Iowa General Assembly, our legislature. Iowa Const. art. III, § 1 (power of the general assembly). *But see id.*, § 16 (executive approval). It is not held by the judiciary. The court lacked the power to revise all ("any") of Iowa's "statutes of limitations" by adding seventy-six days to the periods chosen by our legislature, e.g., one year for ordinance penalties, two years for personal injuries, five years for unwritten contracts, ten years for written contracts, and so on. *See generally* Iowa Code § 614.1 (2020).

We should affirm Judge Rosenberg's dismissal order. I respectfully dissent.

I.

I appreciate my colleagues' efforts on this case. I agree with some of their ideas, but I disagree with others.

A.

Toward the end of its opinion, the majority mentions Iowa Code chapter 29C but suggests that it is relatively unimportant. Yet I think chapter 29C is the key to understanding this case.

Chapter 29C is entitled "Emergency Management and Security." In that chapter, the legislature granted special emergency-related powers to the executive and the judiciary. Indeed, Iowa Code section 29C.4 expressly vests the "supreme court" with authority to promulgate rules to protect "persons taken into custody" during emergencies. We can be sure, then, that if our legislature had also chosen to vest the supreme court with the power to alter statutes of limitations in response to emergencies, that power would appear in section 29C.4, or at least somewhere in chapter 29C. Or at least somewhere in our laws. *See, e.g.*, Iowa R. Civ. P. 1.277 (tolling statute of limitations when class actions are commenced). But no such grant of power appears in our laws. Unlike the legislatures in seven *other* states,[10] the *Iowa* legislature did not grant that power to the courts. That power remained with our legislature.

B.

It is true, of course, that the court wouldn't have needed the legislature's permission *if* some constitutional provision had authorized the seventy-six-day extension. But there is no such provision. Like the concurrence, I do not accept the majority's claims that our supervisory, administrative, or inherent authorities permit this court to revise statutes of limitations, emergency or no. I join the concurrence in rejecting those claims.

---

[10]See Appendix A to the majority opinion. It identifies the states that give courts statutory authority for tolling provisions as Georgia, North Carolina, Oregon, South Dakota, Tennessee, Virginia, and West Virginia.

C.

Along similar lines, the court wouldn't have needed the legislature's permission if the extension had been merely an exercise of statutory *interpretation*, a proper judicial function. The majority implies that that is what happened. According to the majority, the supervisory order merely "worked to preserve the legislature's limitations period, not undermine it," by "ensuring" that personal injury "plaintiffs" had "the full two-year period to investigate and file claims."

I disagree. The first principle of statutory interpretation is that courts can't write statutes—or revise them. *Randolph v. Aidan, LLC*, 6 N.W.3d 304, 307–08 (Iowa 2024). Adding seventy-six days to each of the limitations periods in the Iowa Code was a revision of that Code. It did not preserve the legislature's choices. It set them aside.

Also, while the majority emphasizes the needs of plaintiffs, *defendants* are also important beneficiaries of statutory limitations periods. I see no justification for saddling debtors and other potential defendants with an additional seventy-six days of exposure to suits, especially since courts were open—and plaintiffs were filing suits—during the pandemic. Even during March, April, and May 2020, Iowa plaintiffs filed suits to pursue medical malpractice claims,[11] foreclose liens,[12] seek terminations of parental rights,[13] pursue gross negligence claims,[14]

---

[11] *See Jorgensen v. Smith*, 2 N.W.3d 868, 871 (Iowa 2024) (suit filed May 2020); *Hummel v. Smith*, 999 N.W.2d 301, 303 (Iowa 2023) (suit filed March 23, 2020).

[12] *See Quality Plus Feeds, Inc. v. Compeer Fin., FLCA*, 984 N.W.2d 437, 442 (Iowa 2023) (suit filed March 13, 2020); *Kelly Concrete Co. v. Jim Sattler, Inc.*, No. 20–1158, 2021 WL 3076751, at *1 (Iowa Ct. App. July 21, 2021) (suit filed May 21, 2020).

[13] *See In re K.C.*, No. 20–1105, 2021 WL 609081, at *1 (Iowa Ct. App. Feb. 17, 2021) (suit filed March 30, 2020).

[14] *See Stokes v. Murillo*, No. 23–0289, 2024 WL 1553788, at *2 (Iowa Ct. App. Apr. 10, 2024) (suit filed April 2020).

pursue claims under section 730.5,[15] allege violations of nonpiracy agreements,[16] set aside quitclaim deeds,[17] and more. Indeed, I have seen no evidence that the pandemic prevented any Iowa plaintiffs from filing within the periods chosen by the legislature. This record contains none.

But even acknowledging that some plaintiffs could have benefitted from extensions, it still wasn't the judiciary's place to create them *without* clear constitutional or statutory authorization. This may have been why twenty-eight other state court systems issued COVID-19 supervisory orders that *did not* extend statutes of limitations.[18]

D.

I am also unable to join the concurrence's view that the court's equitable powers can justify a seventy-six-day extension that applies not only in Iowa's state courts, but also in federal courts when Iowa substantive law applies. *See, e.g., Gale v. State Farm Fire & Cas. Co.*, No. 4:21–cv–00168, 2021 WL 6752301, at *1–2, *4–5 (S.D. Iowa Aug. 6, 2021) (applying seventy-six-day extension in diversity action involving Iowa contract law). Indeed, because Iowa's statutes of limitations govern some Federal Employee Retirement Income Security Act (ERISA) claims in federal court, I suppose the extension governs those claims, too. *See, e.g., Pilger v. Sweeney*, 725 F.3d 922, 925–926 (8th Cir. 2013). Similarly, because other states' courts sometimes apply Iowa's statutes of limitations, I think the extension could apply in those courts, too. *See, e.g.,*

---

[15] *See Hampe v. Charles Gabus Motors, Inc.*, No. 22–1599, 2024 WL 111855, at *3 (Iowa Ct. App. Jan. 10, 2024) (suit filed May 2020).

[16] *See Miltner Ins. Servs. v. Roberts*, No. 23–0796, 2024 WL 2043087, at *2 (Iowa Ct. App. May 8, 2024) (suit filed May 2020).

[17] *See Conservatorship of Geerdes v. Cruz*, No. 22–1905, 2023 WL 8449566, at *3 (Iowa Ct. App. Dec. 6, 2023) (suit filed May 2020), *vacated*, 7 N.W.3d 22 (Iowa 2024).

[18] See Appendix A to the majority opinion.

*Hensley v. Mo. Div. of Child Support Enf't,* 905 S.W.2d 889, 890 (Mo. Ct. App. 1995).

In any event, I have three overlapping concerns about the equitable powers theory. First, I question the theory's implicit assumption that the seventy-six-day extension is just like an ordinary law and, therefore, it is entitled to a presumption of constitutionality. We afford such a presumption to acts of the legislature *when* it exercises its constitutional function *of legislating.* But if the legislature took up *non*-legislative governmental functions—holding jury trials or issuing prison sentences—those actions would not be presumed constitutional. Likewise, when the judiciary acts in ways that appear non-judicial—by revising *every* ("any") Iowa statute of limitations sua sponte, without a case or controversy, and without identified litigants—I see no grounds to presume constitutionality.

Second, although equitable tolling doctrines sometimes impact how (or whether) a statute of limitation applies *to a particular case,* those doctrines have nothing to do with a general alteration of all statutory limitations periods that was made outside of and without reference to any particular case.

Our opinions discuss two kinds of equitable tolling: the discovery rule and equitable estoppel. *See Mormann v. Iowa Workforce Dev.,* 913 N.W.2d 554, 570–71 (Iowa 2018). The discovery rule is effectively a tool of statutory interpretation. It applies to some statutes of limitations but not all of them. *See, e.g., MidWestOne Bank v. Heartland Co-op,* 941 N.W.2d 876, 883–85 (Iowa 2020); *Venckus v. City of Iowa City,* 930 N.W.2d 792, 808 (Iowa 2019). When it applies, it governs when the legislatively prescribed period will begin. Specifically, the period begins when the plaintiff "knows or in the exercise of reasonable care should have known both the fact of the injury and its cause." *MidWestOne Bank,*

941 N.W.2d at 884 (quoting *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 116 (Iowa 2006)). *But see, e.g., Tweeten v. Tweeten*, 999 N.W.2d 270, 281–82 (Iowa 2023) (explaining that the discovery rule can operate differently depending on the language of the applicable statute of limitations).

Equitable estoppel, on the other hand, "has nothing to do with the running of the limitations period." *Christy v. Miulli*, 692 N.W.2d 694, 701 (Iowa 2005). Instead, equitable estoppel is effectively a litigation sanction. *Id.* It sanctions defendants by "preclud[ing]" them from "asserting the statute as a defense when it would be inequitable to permit the defendant to do so" because of the defendant's bad behavior, namely, "fraud, misrepresentation, or deception" that somehow "induced" the plaintiff "to refrain from bringing a timely action." *Id.* (quoting 51 Am. Jur. 2d *Limitation of Actions* § 399, at 705 (2000)); *see also Downing v. Grossmann*, 973 N.W.2d 512, 520 (Iowa 2022) ("Equitable estoppel is not premised on the fact that the defendant has harmed the plaintiff but on the fact that—having harmed the plaintiff—the defendant also concealed the existence of a cause of action.").

Equitable doctrines like these cannot justify the seventy-six-day extension. For starters, while equity allows courts to take action in actual cases, the extension was not entered in any actual case. Relatedly, equitable doctrines depend on "a fact-intensive inquiry" into the individual circumstances of particular litigants. *Mormann*, 913 N.W.2d at 575. But the extension did not turn on any such inquiry. Unlike the discovery rule, the extension did not turn on the language of any particular statute of limitations (it applies to all of them) or on the knowledge of any specific plaintiffs about their claims. Unlike in equitable estoppel situations, the extension had nothing to do with anyone's misconduct. Indeed, because the extension didn't involve a particular case, there were no

specific litigants (not even class representatives) whose individual circumstances could be analyzed. So equitable doctrines aren't relevant.

Finally, even assuming that equity could allow a court to enter some kind of extension for some particular litigants based on their particular COVID-19-related circumstances, I cannot take the next step. I cannot make the leap of concluding that this court may use equitable principles to alter *all* Iowa statutes of limitations in all venues—including federal courts and presumably other states' courts (and maybe even arbitrations)—through a sua sponte order entered without any case or controversy before the court, without any litigants before the court, and therefore without any litigant having a chance to say why an extension might be equitable or not. Equity cannot justify an extension of that sort. *See Carter v. DTN Mgmt. Co.*, ___ N.W.3d ___, ___, 2024 WL 3573516, at *19 (Mich. July 29, 2024) (en banc) (Viviano, J., dissenting) ("On the other hand, 'a categorical redrafting of a statute in the name of equity violates fundamental principles of equitable relief and is a gross departure from the proper exercise of the "judicial power." ' " (quoting *Devillers v. Auto Club Ins.*, 702 N.W.2d 539, 556 n.65 (Mich. 2005))); *see also In re Marriage of Gallagher*, 539 N.W.2d 479, 485 (Iowa 1995) (en banc) (Ternus, J., dissenting) ("[E]ven our equitable powers should be exercised in a principled fashion, consistent with precedent; equity is not an opportunity to do whatever we think is right regardless of the law.").

## II.

The separation of powers is a "safeguard against tyranny." *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 873 (Iowa 1978) (en banc). It "lies at the very foundation" of our constitutional democracy. *State ex rel. White v. Barker*, 89 N.W. 204, 208 (Iowa 1902).

This court plays an important role in preserving the separation of powers. When a question is properly presented, it is this court's duty "to determine" whether any branch has exceeded its constitutional limits. *Flattery*, 268 N.W.2d at 873.

We should determine that the judiciary's constitutional limits were exceeded by this court's order extending "any" (meaning all) "statutes of limitations" by seventy-six days. "It is not the function of courts to legislate and they are constitutionally prohibited from doing so." *Hansen v. Haugh*, 149 N.W.2d 169, 172 (Iowa 1967).

I respectfully dissent.